FILED IN OPEN COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA** 2 8 2010
**SOUTHERN DIVISION**

CHARLES R. DIARD, JR.
CLERK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.** 10- 00011 · C B |
| | * | |
| **v.** | * | **USAO # 05RO0363** |
| | * | |
| **KAREN L. BLYTH,** | * | **Violations:** |
| **DAVID H. M. PHELPS, and** | * | **18 U.S.C. § 371;** |
| **JOHN J. POPA** | * | **18 U.S.C. § 545;** |
| | * | **16 U.S.C. §§ 3372(d), 3373(d)(3)(A);** |
| | * | **18 U.S.C. § 2;** |
| | * | **21 U.S.C. §§ 331(a), 333(a)(2), 343(a)(1)** |
| | * | **and (b).** |

**THE GRAND JURY CHARGES:**

At all times relevant to this indictment:

<u>COUNT ONE</u>

**The Defendants**

1.    Defendant **KAREN L. BLYTH** ("BLYTH") was a United States citizen residing in or near Paradise Valley, Arizona.  Defendant **BLYTH** was President and Treasurer of company CSE Inc. ("CSE Inc.") and President and Chief Executive Officer of company RF Inc. ("RF Inc.").

2.    Defendant **DAVID H. M. PHELPS** ("PHELPS") was a United States citizen residing in or near Scottsdale, Arizona.  Defendant **PHELPS** was Vice-President and Secretary of CSE Inc. and a Vice-President of RF Inc.

3.    Defendant **JOHN J. POPA** ("POPA") was a United States citizen residing in or near Pensacola, Florida.  Defendant **POPA** was a Vice-President of RF Inc.

4.        CSE Inc. was a business owned by **BLYTH** and **PHELPS** with its principal business location in Phoenix, Arizona.  **BLYTH** and **PHELPS** used CSE Inc. to buy and sell seafood.  CSE Inc. owned the brand name "Clear Seas" and traded fish and seafood under that brand.

5.        RF Inc. was a business with its principal business location in Pensacola, Florida. RF Inc. was owned from on or about October 1, 2004 through on or about March 2007 by **BLYTH, PHELPS, POPA,** and two other owners.  RF Inc. sold seafood, including but not limited to shrimp, oysters, Lake Victoria perch, and types of catfish, commonly called basa, swai, and sutchi.

### Seafood Importing and Duties, and Seafood Labeling

6.        At all times relevant to this indictment, the United States government required an anti-dumping duty to be paid when fish of the genus *Pangasius,* which are types of catfish commonly called basa, swai, and sutchi, were imported into the United States.  Anti-dumping duties are a particular kind of import duty imposed to help United States companies compete with foreign industry by preventing injury to United States industries from dumping.  Dumping occurs when a foreign firm sells merchandise in the United States market at a price lower than the price it charges for a comparable product sold in its home market, thus unfairly competing with United States domestic producers.  Anti-dumping duties are imposed by the United States Department of Commerce (hereinafter "Commerce Department") when an investigation shows that dumping is occurring.

7.        On July 24, 2002, the Commerce Department published a notice of the initiation of an anti-dumping investigation pursuant to a petition that alleged that certain frozen fish fillets from Vietnam were being sold in the United States at less than fair market value.

8.      On January 31, 2003, the Commerce Department published a preliminary anti-dumping order proposing an anti-dumping duty of up to 63.88% on the imports of certain frozen fish fillets from Vietnam.  This anti-dumping duty rate was made final by order published August 12, 2003, effective January 31, 2004.  The specific products covered by the anti-dumping duty were frozen fish fillets from certain species of the genus *Pangasius* from Vietnam, which is a type of catfish, specifically of "the species *Pangasius Bocourti, Pangasius Hypophthalmus* (also known as *Pangasius pangasius*), and *Pangasius Micronemus*" which includes fish with the market names basa, swai, and sutchi, among others, but does not include fish with market names such as sole or grouper.

9.      Federal law requires that merchandise to be imported, including fish, shall be declared to Customs authorities and classified for entry into the United States.  Federal law specifies that the entry documentation required to secure the release of imported merchandise, including fish, into United States commerce must include at a minimum the commercial invoice and the packing list as well as two Customs forms (Forms 3461 and 7501) that require a description of the merchandise and the tariff code designation.  Title 19, United States Code, Sections 1484 and 1485(a).

10.      It is unlawful to introduce into the commerce of the United States any imported merchandise by means of any false statement, written or verbal, or any false paper, or to make any false statement in any declaration without reasonable cause to believe the truth of such statement, or to procure the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States is deprived of any lawful duties.  Title 18, United States Code, Section 542.

11.     It is unlawful to knowingly import or bring into the United States any merchandise contrary to law, or to receive, conceal, buy, sell or facilitate in any manner the transportation, concealment or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.  Title 18, United States Code, Section 545.

12.     The Lacey Act, Title 16, United States Code, Section 3371 *et seq*., (hereinafter "the Lacey Act"), makes it unlawful for a person to make or submit any false record, account, or label for, or any false identification of, any fish that has been, or is intended to be, imported, exported, transported, sold, purchased, or received from any foreign country, or transported in interstate or foreign commerce.  Title 16, United States Code, Section 3372(d).

13.     The Food and Drug Administration (hereinafter "FDA") maintains a list, publicly available on the internet, of acceptable names (Market, Scientific Common, and Scientific Latin) for the labeling of fish and seafood products, including, among others, several of the approximately twenty-eight species within the genus *Pangasius*.  Basa is the market name for the species of fish known as *Pangasius bocourti*.  Swai, sutchi, and striped pangasius are market names for the species of fish *Pangasius hypophthalmus*.  All are also commonly referred to by individuals in the seafood industry as types of catfish, usually originating in Southeast Asia.

14.     The Federal Food, Drug and Cosmetic Act, Title 21, United States Code, Section 301 *et seq*., prohibits the introduction or delivery for introduction into interstate commerce of any food that is adulterated or misbranded.  Title 21, United States Code, Section 331(a).  A food is misbranded if its labeling is false or misleading in any particular or offered for sale under another name.  Title 21, United States Code, Section 343(a)(1) and (b).

## The Charge

15.     Beginning on or about January 1, 2004 and continuing through on or about November 8, 2006, in the Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS, and**
**JOHN J. POPA,**

did knowingly, willfully, and unlawfully combine, conspire, confederate and agree with each other, and with others both known and unknown to the Grand Jury, to commit offenses against the laws of the United States, namely to:

a.     knowingly make and cause to be made a false record, account, and label for, and false identification of fish and wildlife, specifically fish and wildlife including a type of catfish commonly called basa, swai, and sutchi, Lake Victoria perch, grouper, oysters, and shrimp, that had been and were intended to be transported in interstate and foreign commerce, having a market value greater than $350, and that involved the sale and purchase, the offer of sale and purchase, and the intent to sell and purchase fish and wildlife, and the importation of fish and wildlife, in violation of Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A);

b.     knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of merchandise after importation, specifically frozen fillets of fish of the genus *Pangasius*, a type of catfish, commonly called basa, swai, and sutchi, knowing it to have been imported and brought into the United States contrary to law, specifically having been falsely declared, as required by Title 18, United States Code, Section 542;

and Title 19, United States Code, Sections 1484, 1485(a), and 1592(a)(1);

all in violation of Title 18, United States Code, Section 545;

c.     introduce and deliver for introduction into and to cause to be introduced

and delivered into interstate commerce, with the intent to defraud and

mislead, food that is misbranded, in violation of Title 21, United States

Code, Sections 331(a), 333(a)(2) and 343(a)(1) and (b).

### Manner and Means of the Conspiracy

16.     Among the means and methods employed by **BLYTH, PHELPS, POPA,** and

their co-conspirators in order to carry out the conspiracy and to effect its unlawful objects, are

those set forth in paragraphs 17 to 27 below.

17.     **BLYTH, PHELPS**, and **POPA** used RF Inc. to supply customers in the southern

Alabama and Florida panhandle region with seafood products. **POPA** was located primarily at

the RF Inc. place of business in Florida. **BLYTH** and **PHELPS** traveled to Florida to conduct

RF Inc. business and also conducted RF Inc. accounting and other business management

functions from the CSE Inc. offices in Arizona. CSE Inc. sold seafood products under its Clear

Seas and other brands to RF Inc. and other customers in Alabama and the Florida panhandle

region.

18.     **BLYTH, PHELPS, POPA**, and their co-conspirators, used CSE Inc. to supply

and sell RF Inc. and other customers with seafood products that were falsely labeled. **BLYTH,**

**PHELPS**, and **POPA** used RF Inc. to sell falsely labeled seafood and to substitute cheaper

seafood for more expensive seafood that they sold to customers in the following ways:

19.     **BLYTH, PHELPS, POPA,** and their co-conspirators, had RF Inc. buy basa from CSE Inc., which was recorded in the RF Inc. inventory as grouper and then sold to RF Inc. customers as grouper.

20.     **BLYTH, PHELPS, POPA,** and their co-conspirators removed fish fillets from boxes and from inventory that identified the fish as basa, and placed the fish into boxes that either bore no description or described the fish as grouper or other kinds of fish.  The defendants and their co-conspirators generated documents that falsely described the fish, and sold this fish to customers with invoices that falsely identified the fish to customers as grouper or some other kind of fish.

21.     **BLYTH, PHELPS,** and their co-conspirators arranged for CSE Inc., through unindicted co-conspirator TG's company, to buy approximately 283,500 pounds of frozen fillets of a type of catfish from Vietnam (a fish in the genus *Pangasius*), knowing that it would be labeled falsely and therefore not subject to a tariff when imported.  **BLYTH** and **PHELPS** supplied Clear Seas labels to the Vietnamese supplier for the boxes of this fish, and generated purchase orders and other documents associated with the purchase of this fish that falsely described it as sole.  When the boxes of catfish arrived in the United States from Vietnam, the boxes were labeled as containing sole, the boxes bore stickers with the Latin name *Cynoglossus bilineatus* (the genus and species for fourlined tonguesole), and the documents generated for and accompanying the shipment described the fish as sole.  **BLYTH, PHELPS, POPA,** and their co-conspirators had RF Inc. buy, in small increments, the catfish labeled as sole from CSE Inc.

22.     Once the boxes of catfish fillets falsely labeled as sole began to arrive at RF Inc., **BLYTH, PHELPS, POPA** and their co-conspirators arranged to change the markings on the boxes from sole to grouper or other kinds of fish.  **BLYTH, PHELPS, POPA,** and their co-

conspirators, then sold these boxes re-marked as grouper, and provided invoices to customers falsely claiming they were being sold grouper or sole.

23.    **BLYTH, PHELPS, POPA**, and their co-conspirators had RF Inc. re-sell Lake Victoria perch to customers falsely claiming to those customers in invoices that the fish was grouper or snapper.  The defendants were able to sell more and charge more for the Lake Victoria perch it sold by falsely selling it as grouper or snapper.

24.    **POPA,** and co-conspirators, changed tags and labels on live and shucked oysters purchased from Alabama, in order to indicate a more recent and false harvest date.  The oysters with false harvest dates were then re-sold to customers.

25.    **BLYTH, PHELPS, POPA**, and their co-conspirators repackaged and sold customers shrimp that they claimed to be United States wild caught seafood but was really farm raised and foreign seafood.

26.    **BLYTH, PHELPS, POPA** and their co-conspirators had RF Inc. sell customers fish that they claimed to be fresh but was really frozen fish that had been thawed, trimmed, and washed in a bleach solution.

### **Overt Acts of the Conspiracy**

27.    In furtherance of the conspiracy and to effect the objects of the conspiracy, at least one of the co-conspirators committed or caused to be committed, within the Southern District of Alabama and elsewhere, the following overt acts, among others:

**A.  Imported Basa, a Type of Catfish, Sold as Grouper and Other Fish**

Overt Act 1:   Between on or about January 1, 2004 and on or about May 21, 2004, **BLYTH** and a CSE Inc. employee discussed by telephone that **BLYTH** wanted the CSE Inc.

employee to sell more grouper to their customers because the grouper they were selling was really basa, and therefore CSE Inc. could have a greater mark-up on the fish sold in this way.

Overt Act 2:    On or about May 21, 2004, August 20, 2004, and October 29, 2004, CSE Inc. created and sent invoices to a customer in Alabama that indicated that CSE Inc. sold the customer approximately 2,000 pounds of grouper on each day.  The CSE Inc. employee helped arrange for these sales.  **BLYTH** indicated to the CSE Inc. employee that this product was really basa.

Overt Act 3:    Beginning on or about October 13, 2004, and continuing through on or about August 1, 2005, RF Inc. bought fish called basa from CSE Inc.  The basa was maintained by CSE Inc. at a cold storage facility in Mobile, Alabama.  RF Inc. made these purchases totaling approximately 20,078 pounds on approximately 44 occasions, each occasion constituting an overt act.  **BLYTH** and **POPA**, and CSE Inc. and RF Inc. employees at their direction, would generate purchase orders, invoices, and other documents indicating the product being bought and sold was basa.  The fish, upon being transferred to RF Inc., was reflected in the inventory records of RF Inc. as grouper.

Overt Act 4:    From on or about January 17, 2005 and continuing through on or about February 1, 2006, on approximately 94 occasions, each occasion constituting an overt act, RF Inc. sold a total of approximately 4,021 pounds of this fish called basa to Customer RSB in Milton, Florida, and to Customer GIG in Gulf Shores, Alabama.  The documents generated by RF Inc. and the invoices provided to the customers for these sales falsely indicated the fish was grouper or other fish.

**B. Imported Fish of the Genus *Pangasius*, a Type of Catfish, That Was Labeled as Sole – CSE Inc.'s Purchases and Returns, and CSE Inc.'s Sales to RF Inc.**

<u>Overt Act 5:</u>    On or about November or December 2004, **BLYTH** and **PHELPS** had a conversation in the CSE Inc. offices about buying imported basa, from unindicted co-conspirator TG's company that would be imported labeled as grouper.  **BLYTH** and **PHELPS** also discussed that the boxes in which the fish they referred to as basa was to be packaged would allow them to change the markings on the boxes to different types of fish.

<u>Overt Act 6:</u>    On or about December 11, 2004, unindicted co-conspirator TG sent an email to **BLYTH** and **PHELPS** discussing falsely labeling imported fish.

<u>Overt Act 7:</u>    **BLYTH** and CSE Inc. arranged for the boxes of fish from Vietnam to be boxed in Clear Seas brand boxes, a brand name owned by CSE Inc.

<u>Overt Act 8:</u>    On or about January 20, 2005, **BLYTH** and unindicted co-conspirator TG discussed, by email, ordering containers of "grouper" from Vietnam.

<u>Overt Act 9:</u>    From on or about January 2005 through on or about May 2005, **BLYTH** and CSE Inc. employees made computer entries describing fish as sole, and created documents on or about January 21, 2005, March 11, 2005, March 24, 2005, May 9, 2005, and other dates, describing approximately 243,000 pounds of fish being imported from unindicted co-conspirator TG's company as sole and grouper.

<u>Overt Act 10:</u>  On or about January 24, 2005, **BLYTH** stated in an email to another CSE Inc. employee that the order will not be called grouper but will be shipped as sole "with special ink."

<u>Overt Act 11:</u>  On or about January 27, 2005, a CSE Inc. employee emailed unindicted co-conspirator TG's company to enquire about the status of the ordered grouper and was advised that "the Grouper has become Sole" and that the order status was not available.

Overt Act 12:   On or about February 9, 2005, CSE Inc., at the direction of **BLYTH**, generated purchase orders for the first part of the shipment from unindicted co-conspirator TG's company describing the shipment as sole.

Overt Act 13:   In or about March 2005, **BLYTH** told **POPA** and a RF Inc. employee that they would soon be receiving basa in boxes that would allow them to change the markings on the box so that they would not have to re-box the basa in order to sell it as grouper.

Overt Act 14:   On or about March 24, 2005, CSE Inc., at the direction of **BLYTH**, generated purchase orders for the shipment they were to receive, falsely describing the shipment as sole.

Overt Act 15:   On or about March 30, 2005, the first part of this shipment of two containers of fish from Vietnam arrived at a cold storage facility in Mobile, Alabama.  They each contained approximately 40,500 pounds of fish, for a total of approximately 81,000 pounds of fish.  The fish was packaged in Clear Seas brand boxes, and they were falsely marked as containing sole.

Overt Act 16:   On or about March 30, 2005, CSE Inc. received at this cold storage facility in Mobile, Alabama, one of the containers, weighing approximately 40,500 pounds.

Overt Act 17:   On or about March 31, 2005, RF Inc. generated a purchase order to CSE Inc. for grouper.  Also on or about March 31, 2005, CSE Inc. generated a sales order filling that purchase order with the fish falsely labeled and described as sole that it had received from Vietnam.

Overt Act 18:   On approximately 35 occasions, each occasion being an overt act, beginning on or about March 31, 2005, and continuing through on or about September 30, 2005, CSE Inc. sold to RF Inc. fish of the genus *Pangasius*, a type of catfish commonly called basa,

swai, or sutchi, that was labeled as sole and was recorded as sole in the RF Inc. books and records.  CSE Inc. sold this fish in increments totaling approximately 31,400 pounds of fish, and CSE Inc. and RF Inc. generated documents for these transactions that falsely described the product as sole.

Overt Act 19:  On or about April 1, 2005, the first of the fish labeled as sole in Clear Seas brand boxes was shipped from the cold storage facility in Mobile to RF Inc.

Overt Act 20:  On or about April 4, 2005, **BLYTH** had a telephone conversation with a RF Inc. employee and instructed him to determine how to change the marks on the boxes which indicated that the boxes contained sole.

Overt Act 21:  On or about April 4, 2005, **BLYTH** sent an email to **POPA**, **PHELPS**, and others at RF Inc. and CSE Inc., which stated that they were determining how to erase markings on the boxes of "sole" that they had just received.  On or about this same date, **POPA** showed the **BLYTH** email of the same date to a RF Inc. employee and discussed with the employee different ways to change the box markings.

Overt Act 22:  On or about April 4, 2005, a RF Inc. employee telephoned **PHELPS** and **BLYTH** and described to them the method that he had determined was best for removing the markings indicating sole in order to allow them to re-label the boxes as grouper.

Overt Act 23:  On or about April 4, 2005, **PHELPS** emailed a sales order to the cold storage facility asking them to ship one box of the fish labeled as sole to CSE Inc. by priority Federal Express.

Overt Act 24:  On or about April 4, 2005, CSE Inc. received at a cold storage facility in Mobile, Alabama, the second container of the ordered shipment that had arrived there on or

about March 30, 2005.  It was marked as sole in Clear Seas brand boxes and contained

approximately 40,500 pounds of fish.

Overt Act 25:  Shortly after the first Clear Seas boxes labeled and described as sole began

arriving at RF Inc., a RF Inc. employee had a conversation with **PHELPS** where they discussed

the tariff on basa, and the employee told **PHELPS** that he understood why CSE Inc. and RF Inc.

were labeling the basa as sole.

Overt Act 26:  On or about May 25, 2005, June 7, 2005, June 14, 2005, June 20, 2005,

and June 22, 2005, the remaining fish, approximately 202,500 pounds of fish of the genus

*Pangasius*, a type of catfish known as basa, swai, and sutchi, which **BLYTH**, **PHELPS** and CSE

Inc. had arranged to purchase from unindicted co-conspirator TG's company, arrived at a cold

storage facility in Mobile, Alabama.  The fish was labeled as sole in Clear Seas brand boxes and

was caused by **BLYTH** and **PHELPS** and other unindicted co-conspirators to be described in

related documents generated by unindicted co-conspirator TG's company and the cold storage

facility as sole.

Overt Act 27:  On or about June 24, 2005 and June 27, 2005, CSE Inc. returned a total of

approximately 59,466 pounds of fish, which was still stored at a cold storage facility in Mobile,

Alabama, labeled as sole in Clear Seas brand boxes, to the possession of unindicted co-

conspirator TG's company.  At **BLYTH**'s direction, a CSE Inc. employee created documents

associated with this return that described the fish as sole.  As part of this transaction, **BLYTH**

and CSE Inc. also caused the cold storage facility to generate documents that described this fish

as sole.

### C.  RF Inc. Sale of the Fish Imported and Labeled as Sole to Customers

Overt Act 28:  From on or about April 13, 2005 through on or about May 28, 2005, on approximately 14 occasions, each occasion constituting an overt act, RF Inc. sold a total of approximately 765 pounds of fish, which RF Inc. had purchased as sole, to Customer KS in Niceville, Florida.  On each of these occasions, **POPA**, and employees at **POPA**'s direction, generated invoices and other documents that falsely described the fish being sold as grouper or sole, when in fact it was some other kind of fish, namely, a type of catfish.

Overt Act 29:  From on or about April 6, 2005 through on or about July 14, 2005, on approximately 17 occasions, each occasion constituting an overt act, RF Inc. sold a total of approximately 9,975 pounds of fish, which RF Inc. had purchased as sole, to Customer BS in Bon Secour, Alabama.  On each of these occasions, **POPA**, and employees at **POPA**'s direction, generated invoices and other documents that falsely described the fish being sold as grouper or sole, when in fact it was some other kind of fish, namely, a type of catfish.

Overt Act 30:  From on or about April 9, 2005 through on or about September 30, 2005, on approximately 28 occasions, each occasion constituting an overt act, RF Inc. sold a total of approximately 855 pounds of fish, which RF Inc. had purchased as sole, to Customer GIG in Gulf Shores, Alabama.  On each of these occasions, **POPA**, and employees at **POPA**'s direction, generated invoices and other documents that falsely described the fish being sold as grouper, when in fact it was some other kind of fish, namely, a type of catfish.

Overt Act 31:  From on or about April 22, 2005 through on or about September 27, 2005, on approximately 19 occasions, each occasion constituting an overt act, RF Inc. sold a total of approximately 2,100 pounds of fish, which RF Inc. had purchased as sole, to Customer EAFB. On each of these occasions, **POPA**, and employees at **POPA**'s direction, generated invoices and

other documents that falsely described the fish being sold as grouper or sole, when in fact it was some other kind of fish, namely, a type of catfish.

### D.  RF Inc. Sales of Basa to Customer EAFB

Overt Act 32:  Several times a month, from at least on or about October 2004 to on or about January 31, 2006, **POPA** contacted the Customer EAFB food operations manager by telephone to confirm an order of grouper from RF Inc.  The food operations manager usually requested that **POPA** and RF Inc. supply grouper in shipments of 150 pounds per week.  **POPA** indicated to Customer EAFB's food operations manager that RF Inc. would fill those orders as requested.

Overt Act 33:  From on or about February 2004 through on or about April 18, 2005, RF Inc. employees, at **POPA**'s direction, took fish from the RF Inc. basa inventory, removed it from a Clear Seas brand boxes marked basa, and placed it into plain brown boxes.  Those boxes were then usually marked as containing grouper.

Overt Act 34:  From on or about October 26, 2004 through on or about January 31, 2006, on approximately 31 occasions, each occasion constituting an overt act, RF Inc. sold a total of approximately 5,270 pounds of this fish called basa to Customer EAFB.  On each of these occasions, **POPA**, and employees at **POPA**'s direction, marked boxes and generated invoices and other documents that described the fish being sold as grouper, when in fact it was some other kind of fish.

### E.  RF Inc. Purchase of Swai from Supplier IS

Overt Act 35:  On or about June 6, 2005, **BLYTH**, **PHELPS**, **POPA**, and others known to the grand jury discussed and determined to buy fish from Supplier IS that would be labeled as grouper but was understood to be really basa, a fish of the genus *Pangasius*.

<u>Overt Act 36:</u>   On or about June 7, 15, and 28, 2005 and July 5, 19, and 20, 2005, each occasion constituting an overt act, RF Inc. generated purchase orders and other documents for the purchase of the fish that described it as grouper, when in truth and in fact it was fish of the genus *Pangasius*.

### F.  RF Inc. Sales of Lake Victoria Perch to Customers

<u>Overt Act 37:</u>   From on or about January 20, 2005 through on or about May 8, 2006, on approximately 99 occasions, each occasion constituting an overt act, RF Inc. purchased fish, specifically Lake Victoria perch from Supplier AF, which had been imported into the United States.

<u>Overt Act 38:</u>   From on or about February 28, 2005 through on or about March 30, 2006, on approximately 211 occasions, each occasion constituting an overt act, **POPA**, and RF Inc. employees at the direction of **POPA**, sold a total of approximately 4,795 pounds of Lake Victoria perch to approximately 24 customers in Alabama and Florida, and generated documents and provided invoices to the customers that described the Lake Victoria perch as grouper and snapper.

### G.  RF Inc. Sale of Grouper as Snapper and Lake Victoria Perch as Grouper to Customer RR

<u>Overt Act 39:</u>   From on or about April 6, 2005 and continuing through on or about March 31, 2006, on approximately 62 occasions, each occasion constituting an overt act, RF Inc. sold a total of approximately 1,252 pounds of fish to Customer RR in Spanish Fort, Alabama.  RF Inc. employees, at the direction of **POPA**, would routinely substitute grouper for snapper and Lake Victoria perch for grouper for these purchases.

<u>Overt Act 40:</u>   From on or about April 6, 2005 and continuing through on or about March 31, 2006, **POPA**, and RF Inc. employees at **POPA**'s direction, would create invoices and

other documents that falsely indicated the type of fish being sold to Customer RR in Spanish

Fort, Alabama.

### H.    RF Inc. Oyster Dating

Overt Act 41:  Between on or about March 2005 and on or about April 30, 2005, **POPA,**

and a RF Inc. employee at **POPA**'s direction, removed oyster tags from approximately thirty

boxes of live oysters that had been purchased from a supplier on the gulf coast of Alabama near

Bayou LaBatre, Alabama.  **POPA** and a RF Inc. employee discarded the tags.

Overt Act 42:  Between on or about March 2005 and on or about April 30, 2005, **POPA,**

and a RF Inc. employee at **POPA**'s direction, generated new tags that indicated a later harvest

date for the oysters and placed those tags back in the oyster boxes.

Overt Act 43:  Between approximately March 2005 and approximately April 30, 2005,

RF Inc. sold those oysters with the tags which had an altered and false date.

Overt Act 44:  On or about November 18, 2005, **POPA** instructed a RF Inc. employee to

collect tags from approximately ten boxes of live oysters in the RF Inc. warehouse.  The oysters

had been purchased from a supplier on the gulf coast of Alabama, near Bon Secour, Alabama.

The tags indicated the date on which the oysters had been harvested.  **POPA** instructed the RF

Inc. employee to change the dates indicated on the oyster tags.  The RF Inc. employee collected

the tags and gave them to **POPA**.

Overt Act 45:  On or about November 18, 2005, **POPA** changed the harvest date on the

tags accompanying approximately ten boxes of live oysters.  **POPA** placed those changed tags

back in the oyster boxes.

Overt Act 46:  On or about November 18 and 19, 2005, RF Inc. sold the oysters with tags

that falsely indicated their harvest date to customers in Alabama and Florida.

Overt Act 47:  Between approximately January 2006 and approximately March 2006, on at least two occasions, **POPA** instructed a RF Inc. employee to remove tags from approximately seventeen boxes of live oysters that had been purchased from a supplier on the gulf coast of Alabama, near Bon Secour, Alabama.  The employee removed the tags and provided them to **POPA**.

Overt Act 48:  Between approximately January 2006 and approximately March 2006, on at least two occasions, **POPA** changed the dates on the oyster tags, and instructed the RF Inc. employee to return the tags to the oyster boxes from which they had come.

Overt Act 49:  Between approximately January 2006 and approximately March 2006, the boxes of oysters with the tags indicating an altered and false date were sold by RF Inc.

Overt Act 50:  In approximately April 2006, **POPA**, and a RF Inc. employee at the direction of **POPA**, changed the dates indicating the date upon which the oysters were shucked on approximately twelve buckets of shucked oysters.  These oysters had been purchased from suppliers in Alabama on the gulf coast.  RF Inc. sold these oysters with the altered and false dates to purchasers in Florida and Alabama.

   I.  **RF Inc. Sale of Frozen Fish as Fresh Fish, Sale of Foreign Farm Raised Shrimp as U.S. Wild Caught, and Sales of Short Count Shrimp**

Overt Act 51:  Between approximately August 2005 and approximately April 2006, RF Inc. employees, at the direction of **POPA**, thawed frozen fish and washed that fish in a bleach solution.  RF Inc. then sold the fish, falsely claiming it was fresh fish.  **BLYTH** was told about this practice by a RF Inc. employee.

Overt Act 52:  Between approximately January 2005 and approximately June 2005, RF Inc. employees, at the direction of **POPA**, took shrimp out of boxes indicating that the shrimp was farm raised in another country and repackaged it in boxes indicating that it was wild caught

United States shrimp. RF Inc. then sold these foreign farm raised shrimp as United States wild caught shrimp. RF Inc. sold approximately 18,000 pounds of shrimp in this manner.

Overt Act 53: Between approximately January 2005 and approximately June 2005, RF Inc. substituted smaller shrimp for larger shrimp. RF Inc. generated invoices indicating that the shrimp were of a lower count per pound, and therefore larger and more expensive, than they actually were. RF Inc. sold these shrimp to customers in southern Alabama.

Overt Act 54: On at least one occasion between approximately January 2005 and approximately June 2005, **PHELPS** helped a RF Inc. employee re-box shrimp. The RF Inc. employee had a conversation with **PHELPS** and a separate conversation with **BLYTH** in which the employee told **PHELPS** and **BLYTH** that the employee was unhappy that he was being told to re-box and falsely label shrimp in this manner.

All in violation of Title 18, United States Code, Sections 371.

## COUNTS TWO TO SEVEN

28.    The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

29.    From on or about February 9, 2005 through on or about June 27, 2005, related to shipments of fish arriving on or about the dates specified in the counts below, in the Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH and**
**DAVID H. M. PHELPS,**

did knowingly make and cause to be made a false record, account, and label for, and false identification of fish, that had been and was intended to be transported in interstate and foreign commerce, having a market value greater than $350, and that involved the sale and purchase, the

offer of sale and purchase, and the intent to sell and purchase fish, and the importation of fish, in

that the defendants created and caused to be created invoices, boxes, and other documents that

falsely identified the fish as sole and *Cynoglossus bilineatus*, when in truth and in fact it was fish

of the genus *Pangasius*, a type of catfish commonly known as basa, swai, and sutchi:

| Count | For Shipments That Arrived on or About | Containing Approximately Pounds of Fish |
|-------|----------------------------------------|------------------------------------------|
| TWO | 3/30/2005 | 81,000 lbs. (two containers of 40,500 lbs. each) |
| THREE | 5/25/2005 | 40,500 lbs. |
| FOUR | 6/7/2005 | 40,500 lbs. |
| FIVE | 6/14/2005 | 40,500 lbs. |
| SIX | 6/20/2005 | 40,500 lbs. |
| SEVEN | 6/22/2005 | 40,500 lbs. |

All in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d)(2) and

3373(d)(3)(A); and Title 18, United States Code, Section 2.

## COUNTS EIGHT THROUGH NINE

30.     The allegations contained above in Paragraphs 1 through 15 of Count One are

hereby re-alleged and incorporated by reference herein.

31.     On or about the dates specified below, in the Southern District of Alabama and

elsewhere, the defendants,

**KAREN L. BLYTH and**
**DAVID H. M. PHELPS,**

did knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale

of merchandise after importation, specifically frozen fish fillets of the genus *Pangasius*, a type of

catfish commonly known as basa, swai, and sutchi, in the quantities set forth below, knowing it

to have been imported and brought into the United States contrary to law, that is, falsely declared

and without applicable duties having been paid, contrary to Title 18, United States Code, Section

542; and Title 19, United States Code, Sections 1484, 1485(a), and 1592(a)(1);

| Count | On or About Date | Approximate Amount |
|-------|------------------|--------------------|
| EIGHT | 3/30/2005 | 40,500 lbs. |
| NINE | 4/04/2005 | 40,500 lbs. |

All in violation of Title 18, United States Code, Sections 545 and 2.

## COUNT TEN

32.    The allegations contained above in Paragraphs 1 through 15 of Count One are

hereby re-alleged and incorporated by reference herein.

33.    From on or about March 30, 2005 through on or about June 22, 2005, in the

Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH and
DAVID H. M. PHELPS,**

with intent to defraud and mislead, introduced and delivered and caused to be introduced and

delivered into interstate commerce food, specifically frozen fish fillets, that was misbranded, in

that it had been falsely and misleadingly labeled and described as sole and *Cynoglossus*

*bilineatus*, when in truth and in fact it was fish of the genus *Pangasius,* a type of catfish,

commonly known as basa, swai, and sutchi.

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(2) and 343(a)(1) and (b); and Title 18, United States Code, Section 2.

## COUNT ELEVEN

34.     The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

35.     From on or about March 31, 2005 through on or about September 30, 2005, in the Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS, and**
**JOHN J. POPA,**

did knowingly make and cause to be made a false record, account, and label for, and false identification of fish, that had been and was intended to be transported in interstate and foreign commerce, having a market value greater than $350, and that involved the sale and purchase, the offer of sale and purchase, and the intent to sell and purchase fish, and the importation of fish, in that the defendants created and caused to be created invoices, purchase orders, computer entries, box markings and other documents for fish transactions between CSE Inc. and RF Inc. which totaled approximately 34,100 pounds, that falsely identified the fish as sole, when in truth and in fact it was fish of the genus *Pangasius*, a type of catfish, commonly called basa, sutchi or swai.

All in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A); and Title 18, United States Code, Section 2.

## COUNT TWELVE

36.     The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

37.     From on or about March 31, 2005, through on or about September 30, 2005, in the Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS, and**
**JOHN J. POPA,**

did knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of merchandise after importation, specifically frozen fish fillets, totaling approximately 34,100 pounds, of the genus *Pangasius*, a type of catfish known as basa, sutchi, and swai, but labeled and described as sole, knowing it to have been imported and brought into the United States contrary to law, that is, falsely declared and without applicable duties having been paid, contrary to Title 18, United States Code, Section 542; and Title 19, United States Code, Sections 1484, 1485(a), and 1592(a)(1).


All in violation of Title 18, United States Code, Sections 545 and 2.

## COUNT THIRTEEN

38.     The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

39.     From on or about March 31, 2005 through on or about September 30, 2005, in the Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS,**
**JOHN J. POPA,**

with intent to defraud and mislead, introduced and delivered and caused to be introduced and

delivered into interstate commerce food, specifically frozen fish fillets totaling approximately

34,100 pounds, that was misbranded, in that it had been falsely and misleadingly described and

labeled as sole and *Cynoglossus bilineatus*, when in truth and in fact it was fish of the genus

*Pangasius,* a type of catfish also known as basa, swai, and sutchi.

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(2) and 343(a)(1)

and (b); and Title 18, United States Code, Section 2.

## COUNTS FOURTEEN THROUGH SEVENTEEN

40.     The allegations contained above in Paragraphs 1 through 15 of Count One are

hereby re-alleged and incorporated by reference herein.

41.     From on or about the dates specified below, in the Southern District of Alabama

and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS, and**
**JOHN J. POPA,**

did knowingly make and cause to be made a false record, account, and label for, and false

identification of fish, that had been and was intended to be transported in interstate and foreign

commerce, having a market value greater than $350, and that involved the sale and purchase, the

offer of sale and purchase, and the intent to sell and purchase fish, and the importation of fish, in

that the defendants created and caused to be created invoices and box markings, for the

purchasers specified below, that falsely identified the fish being sold as grouper and sole, when

in truth and in fact it was some other type of fish, a type of catfish, also known as basa, sutchi,

and swai:

| Count | Business Sold To/Invoice Created For | On or About Dates | Approximate Pounds of Fish Sold | Fish Sold As |
|-------|--------------------------------------|-------------------|---------------------------------|--------------|
| FOURTEEN | Customer KS Niceville, FL | 4/13/2005 through 5/28/2005 | 765 lbs. | grouper and sole |
| FIFTEEN | Customer BS Bon Secour, AL | 4/6/2005 through 7/14/2005 | 9,975 lbs. | grouper and sole |
| SIXTEEN | Customer GIG Gulf Shores, AL | 4/9/2005 through 9/30/2005 | 855 lbs. | grouper |
| SEVENTEEN | Customer EAFB Pensacola, FL | 1/28/2005 through 1/31/2006 | 7,520 lbs. | grouper and sole |

All in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d)(2) and

3373(d)(3)(A); and Title 18, United States Code, Section 2.


## COUNT EIGHTEEN


42.     The allegations contained above in Paragraphs 1 through 15 of Count One are

hereby re-alleged and incorporated by reference herein.

43.     From on or about April 6, 2005 through on or about September 30, 2005, in the

Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS, and**
**JOHN J. POPA,**

with intent to defraud and mislead, introduced and delivered and caused to be introduced and delivered into interstate commerce to Customer BS in Bon Secour, Alabama and Customer GIG in Gulf Shores, Alabama, food, specifically approximately 10,830 pounds of fish, that was misbranded, in that it had been falsely and misleadingly labeled as grouper and sole, when in truth and in fact it was some other type of fish, a type of catfish also known as basa, swai, and sutchi.

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(2) and 343(a)(1) and (b); and Title 18, United States Code, Section 2.

## COUNT NINETEEN

44.    The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

45.    From on or about January 17, 2005 through on or about April 3, 2006, in the Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS, and**
**JOHN J. POPA,**

did knowingly make and cause to be made a false record, account, and label for, and false identification of fish, purchased as "basa," that had been and was intended to be transported in interstate and foreign commerce, having a market value greater than $350, and that involved the sale and purchase, the offer of sale and purchase, and the intent to sell and purchase fish, in that the defendants created and caused to be created invoices and other documents, for Customer GIG

in Gulf Shores, Alabama, and Customer RSB in Milton, Florida, that falsely identified

approximately 3,400 lbs. of the fish being sold as grouper.

All in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d)(2) and

3373(d)(3)(A); and Title 18, United States Code, Section 2.

## COUNT TWENTY

46.     The allegations contained above in Paragraphs 1 through 15 of Count One are

hereby re-alleged and incorporated by reference herein.

47.     From on or about June 7, 2005 through on or about June 15, 2005, in the Southern

District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS, and**
**JOHN J. POPA,**

did knowingly make and cause to be made a false record, account, and label for, and false

identification of fish, that had been and was intended to be transported in interstate and foreign

commerce, having a market value greater than $350, and that involved the sale and purchase, the

offer of sale and purchase, and the intent to sell and purchase fish, and the importation of fish, in

that the defendants created and caused to be created invoices, purchase orders, computer entries,

and other documents for approximately 2,800 pounds of fish from Supplier IS that falsely

indicated the fish being purchased was grouper, when in truth and in fact it was fish of the genus

*Pangasius,* a type of catfish, also known as basa, sutchi, and swai.

All in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d)(2) and

3373(d)(3)(A); and Title 18, United States Code, Section 2.

## COUNT TWENTY-ONE

48.    The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

49.    From on or about June 7, 2005 through on or about June 15, 2005, in the Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,
DAVID H. M. PHELPS, and
JOHN J. POPA,**

with intent to defraud and mislead, introduced and delivered and caused to be introduced and delivered into interstate commerce food, specifically frozen fish fillets, that was misbranded, in that it had been falsely and misleadingly labeled and described as grouper, when in truth and in fact it was fish of the genus *Pangasius*, a type of catfish, also known as basa, swai and sutchi.

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(2) and 343(a)(1) and (b); and Title 18, United States Code, Section 2.

## COUNTS TWENTY-TWO THROUGH TWENTY-FOUR

50.    The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

51.    On or about the dates specified below, in the Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,
DAVID H. M. PHELPS, and**

- 28 -

### JOHN J. POPA,

did knowingly make and cause to be made a false record, account, and label for, and false

identification of fish, purchased as Lake Victoria perch, that had been and was intended to be

transported in interstate and foreign commerce, having a market value greater than $350, and that

involved the sale and purchase, the offer of sale and purchase, and the intent to sell and purchase

fish, and the importation of fish, in that the defendants created and caused to be created invoices

for the businesses identified below that falsely identified the fish being sold as grouper and

snapper:

| Count | Business Sold To/Invoice Created For | On or About Dates | Approximate Pounds of Fish Sold |
|---|---|---|---|
| **TWENTY-TWO** | Customer BGQR<br>Orange Beach, AL | 3/2/2005 through 7/20/2005 | 1,258 lbs. |
| **TWENTY-THREE** | Customer NMSH<br>Elberta, AL and Pensacola, FL | 3/1/2005 through 3/30/2006 | 1,278 lbs. |
| **TWENTY-FOUR** | Customer BRS<br>Fairhope, AL and Gulf Shores, AL | 2/28/2005 through 3/20/2006 | 1,131 lbs. |
| | Customer C<br>Mobile, AL | | |
| | Customer FSM<br>Foley, AL | | |
| | Customer GIG<br>Gulf Shores, AL | | |
| | Customer LP<br>Mobile, AL | | |
| | Customer LBR<br>Lillian, AL | | |
| | Customer MBB<br>Daphne, AL | | |
| | Customer MSR<br>Gulf Shores, AL | | |
| | Customer RP<br>Mobile, AL | | |

All in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d)(2) and

3373(d)(3)(A); and Title 18, United States Code, Section 2.


## COUNT TWENTY-FIVE

52.    The allegations contained above in Paragraphs 1 through 15 of Count One are

hereby re-alleged and incorporated by reference herein.

53.    From on or about April 6, 2005 through on or about March 31, 2006, in the

Southern District of Alabama and elsewhere, the defendants,

**KAREN L. BLYTH,**
**DAVID H. M. PHELPS, and**
**JOHN J. POPA,**

did knowingly make and cause to be made a false record, account, and label for, and false

identification of fish, purchased as Lake Victoria perch, that had been and was intended to be

transported in interstate and foreign commerce, having a market value greater than $350, and that

involved the sale and purchase, the offer of sale and purchase, and the intent to sell and purchase

fish, and the importation of fish, in that the defendants created and caused to be created invoices

for sales to Customer RR of Spanish Fort, Alabama, totaling approximately 1,253 pounds, that

falsely identified the fish being sold as snapper when it had been bought as grouper, and that

falsely identified the fish being sold as grouper when it had been bought as Lake Victoria perch.


All in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d)(2) and

3373(d)(3)(A); and Title 18, United States Code, Section 2.

## COUNTS TWENTY-SIX THROUGH TWENTY-EIGHT

54.     The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

55.     On or about the dates specified below, in the Southern District of Alabama and elsewhere, the defendant,

### JOHN J. POPA,

did knowingly make and cause to be made a false record, account, and label for, and false identification of fish and wildlife, that had been and was intended to be transported in interstate commerce, having a market value greater than $350, and that involved the sale and purchase, the offer of sale and purchase, and the intent to sell and purchase fish and wildlife, in that the defendant changed and caused a change of the harvest date on tags and other labels for oysters to falsely indicate that the oysters had been harvested more recently than the tags and labels had indicated:

| Count | On or About Dates | Approximate Pounds of Oysters |
| --- | --- | --- |
| TWENTY-SIX | 3/24/2005 through 4/30/2005 | 900 lbs. |
| TWENTY-SEVEN | 11/18/2005 | 300 lbs. |
| TWENTY-EIGHT | 2/1/2006 through 4/6/2006 | 500 lbs. |

All in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A); and Title 18, United States Code, Section 2.

## NOTICE OF FORFEITURE

1.      The allegations contained above in Paragraphs 1 through 15 of Count One are hereby re-alleged and incorporated by reference herein.

2.      Upon conviction of one or more of the offenses alleged in Counts 1, 8, 9, and 12, and pursuant to Title 18, United States Code, Section 982(a)(2)(B), jointly and severally, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offenses, and, pursuant to Title 18, United States Code, Section 545 and Title 28, United States Code, Section 2461(c), any merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof, including but not limited to the following:

          a.   The proceeds from the sale of approximately 34,100 pounds of *Pangasius* species imported and labeled as sole.

3.      Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendants **BLYTH**, **PHELPS**, and **POPA**, if so convicted,  shall forfeit substitute property, up to the total value of the property described in this notice of forfeiture, if, by any act or omission of the defendants, the property, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

_____

FOREMAN, UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA


KENYEN R.  BROWN
UNITED STATES ATTORNEY
By:

DEBORAH A. GRIFFIN
Assistant United States Attorney


MARIA E.  MURPHY
Assistant United States Attorney
Chief, Criminal Division


IGNACIA MORANO,
ASSISTANT ATTORNEY GENERAL
UNITED STATES DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES DIVISION
By:

WAYNE D. HETTENBACH
Senior Trial Attorney
SUSAN L. PARK
Trial Attorney
Environmental Crimes Section                            JANUARY 2010